# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| WHEELCHAIR AND WALKER RENTALS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-18-CV-00340-FM |
| ALEX M. AZAR II, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § § § | |
| Defendant. | § § | |

## ORDER GRANTING MOTION TO DISMISS

Before the court is "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim" [ECF No. 24], filed March 4, 2019 by Alex M. Azar II, Secretary of the United States Department of Health and Human Services ("Defendant"); "Plaintiff's Amended Response to Defendant's Motion to Dismiss" [ECF No. 27], filed March 22, 2019 by Wheelchair and Walker Rentals, Inc. ("Plaintiff"); and "Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss" [ECF No. 30], filed April 5, 2019.

This case arises from a billing dispute over Medicare payments for services rendered by Plaintiff. Plaintiff seeks injunctive relief to "suspend recoupment, refund the improperly recouped funds, and halt accrual of interest on the alleged overpayment amount until Defendant can provide an ALJ hearing in accordance with 42 U.S.C. § 1395ff(d)."[1]

---

[1] "Verified Complaint for Injunctive Relief and Attorneys Fees" ("Compl.") 2 ¶ 2, ECF No. 1, filed Nov. 6, 2018.

## I. BACKGROUND

### A. *Medicare Act*

In order to understand the issue in dispute, it is necessary to examine the Medicare Act, 42 U.S.C. § 1395 *et seq.* The Medicare Act was enacted in 1965 under Title XVIII of the Social Security Act.[2] The Secretary of the United States Department of Health and Human Services ("Secretary") promulgates regulations for the administration of the Medicare program.[3] Medicare Administrative Contractors ("MAC") determine payment amounts for covered claims and reimburse the healthcare provider.[4]

In the event a healthcare provider is dissatisfied with a determination by the MAC, it may seek review of the determination pursuant to 42 U.S.C. § 1395ff ("§ 1395ff").[5] Section 1395ff prescribes a four-step administrative review process and permits judicial review following its completion.[6] In the first stage of review, the MAC conducts a redetermination of the assessed amount of overpayments.[7] During the second stage of review, the healthcare provider seeks reconsideration by a Qualified Independent Contractor ("QIC")—a third-party contractor who "review[s] the evidence and findings" from the prior determination.[8]

---

[2] 42 U.S.C. § 1395 *et seq.*

[3] *Id.* § 1395ff(a)(1).

[4] *Id.* §§ 1395u(a), 1395kk-1(a)(4).

[5] *Id.* § 1395ff(b)(1)(A).

[6] *Cumberland Cty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 53 (4th Cir. 2016).

[7] 42 U.S.C. § 1395ff(a)(3); *Cumberland Cty. Hosp. Sys.*, 816 F.3d at 53.

[8] 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.968.

2

At the third stage, the healthcare provider may seek review of the QIC's reconsideration in a hearing before an Administrative Law Judge ("ALJ").[9] In such hearing, the "parties may submit evidence . . . , examine the evidence used in making the determination under review, and present and/or question witnesses."[10] Finally, the fourth stage consists of a *de novo* review of the ALJ's decision by the Departmental Appeals Board ("DAB").[11] The DAB "shall conduct and conclude a review of the decision."[12] A decision by the DAB concludes the administrative review process.[13] Dissatisfied healthcare providers may then seek judicial review in a United States District Court.[14]

The Medicare Act provides deadlines for the completion of each stage of review. The first two stages of review require a decision within sixty days.[15] In the event a deadline is not adhered to, the Medicare Act permits a healthcare provider to bypass—or "escalate"—to the next stage of review.[16] For instance, if the QIC fails to render a decision within sixty days, the healthcare provider may opt to "escalate" the review process by requesting a hearing before an ALJ.[17] In a similar fashion, if the ALJ does not conduct a hearing of the QIC's redetermination

---

[9] 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1000.

[10] 42 C.F.R. § 405.1000.

[11] 42 U.S.C. § 1395ff(d)(2)(A).

[12] *Id.*

[13] 42 C.F.R. § 405.1130.

[14] 42 U.S.C. § 1395ff(b)(1)(A).

[15] *Id.* § 1395ff(a)(3)(C)(ii).

[16] *See id.* § 1395ff(c)(3)(C)(ii); *id.* § 1395ff(d)(3)(A); *id.* § 1395ff(d)(3)(B).

[17] *Id.* § 1395ff(c)(3)(C)(ii). When an appeal is escalated to the ALJ from the second stage of review, the ALJ shall issue a decision within 180 days. 42 C.F.R. § 405.1016.

3

within ninety days,[18] the healthcare provider may "escalate" to the next stage and seek review by the DAB.[19] If the DAB does not issue a decision within sixty days, a healthcare provider may opt for judicial review.[20]

Under 42 U.S.C. § 1395ddd(f)(1)(A) ("§ 1395ddd"), the Secretary may not recoup an alleged overpayment until review by the QIC is completed.[21] In other words, § 1395ddd only suspends the recoupment of overpayments in the first two stages of review.[22] There is no provision barring the recoupment of overpayments during the third and fourth stages of review.[23]

### B. Factual Background

Plaintiff is a durable medical equipment supplier who participates in the Medicare program.[24] According to Plaintiff, it "derives some 70% of its total revenues from Medicare payments."[25] On June 29, 2016, Health Integrity, LLC—a Zone Program Integrity Contractor ("ZPIC")—identified an overpayment in the amount of $2,449,631.40 for claims during the

---

[18] *Id.* § 1395ff(d)(1)(A).

[19] *Id.* § 1395ff(d)(3)(A). If the healthcare provider opts to escalate to review by the DAB in the event the ALJ fails to conclude a hearing within ninety days, the deadline for the DAB to issue a final decision is 180 days. 42 C.F.R. § 405.1100(d).

[20] 42 C.F.R. § 405.11132(b).

[21] 42 U.S.C. § 1395ddd(f)(1)(A).

[22] *See id.*

[23] *See id.*

[24] Compl. 8 ¶ 21.

[25] *Id.* at 8 ¶ 22.

4

period of September 30, 2012 to February 5, 2016.[26] Plaintiff disputes this assessed amount of overpayment.[27]

In accordance with § 1395ff, Plaintiff sought a redetermination by the MAC of the overpayment amount assessed by ZIPC.[28] On October 12, 2016, the MAC sustained ZPIC's overpayment determination.[29] Plaintiff then sought a reconsideration by the QIC on November 23, 2016.[30] The QIC determined the amount of overpayment was $2,144,286.40—$305,345 less than the MAC decision—with an interest balance of $160,829.01.[31] On April 24, 2018, Plaintiff filed for a hearing before an ALJ.[32] Section 1395ff sets a sixty-day deadline to conduct this hearing.[33] No hearing has occurred.[34] According to Plaintiff, an ALJ hearing will not be available for approximately three to five years.[35]

---

[26] *Id.* at 8 ¶ 23.

[27] *See id.* at 9 ¶ 25. It is unclear from the Complaint what Plaintiff disputes as to the assessed overpayment amount.

[28] *Id.*

[29] Compl. 9 ¶ 26.

[30] *Id.* at 9 ¶ 27.

[31] *Id.* at 9 ¶ 29.

[32] *Id.* at 10 ¶ 30.

[33] 42 U.S.C. § 1395ff(d)(1)(A).

[34] Compl. 10 ¶ 30.

[35] *Id.* at 10 ¶ 31.

In the meantime, Plaintiff was approved for a graduated sixty-month extended repayment schedule for the assessed overpayment of $2,144,386.40 plus ten percent interest.[36] Plaintiff started making payments on August 15, 2017.[37]

On November 6, 2018, Plaintiff filed suit, asserting the following claims for relief: (1) violation of procedural Due Process under the Fifth and Fourteenth Amendments;[38] (2) violation of the Medicare Act by failing to adhere to the ninety-day deadline for a hearing before an ALJ;[39] (3) violation of § 1395ddd by imposing recoupment without making an ALJ hearing available within ninety days;[40] and (4) an *ultra vires* claim based on the Secretary's failure to provide an ALJ hearing.[41] Plaintiff seeks injunctive relief to temporarily suspend recoupment and refund the recouped amounts pending the completion of an ALJ hearing.[42]

*C. Parties' Arguments*

Defendant moves to dismiss the suit under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, as well as Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[43]

---

[36] *Id.* at 10 ¶ 32.

[37] *Id.*

[38] *Id.* at 11 ¶ 36.

[39] *Id.* at 12 ¶ 42.

[40] Compl. 13 ¶ 49.

[41] *Id.* at 14 ¶ 54.

[42] *Id.* at 14 ¶ 58.

[43] Mot. 6, 17.

6

1. <u>Motion to Dismiss for Lack of Jurisdiction</u>

   a. *Defendant's Arguments*

Defendant argues that Plaintiff's reliance on the Fifth Circuit decision, *Family Rehabilitation, Inc. v. Azar*[44] to establish jurisdiction is misplaced.[45] Furthermore, Defendant contends Congress has not waived sovereign immunity for Plaintiff's claims against the Secretary.[46]

Additionally, Defendant points to Plaintiff's failure to present its claims to the Secretary.[47] Defendant asserts further that Plaintiff failed to exhaust its administrative remedies.[48] According to Defendant, a waiver of exhaustion under the collateral-claim exception, as established in *Mathews v. Eldridge*,[49] is not applicable.[50] Defendant also argues the *Illinois Council* "no review" exception to exhaustion from *Shalala v. Illinois Council on Long Term Care, Inc.*[51] also does not apply.[52] Thus, Defendant argues Plaintiff failed to establish requisite jurisdictional elements.[53]

---

[44] 886 F.3d 496 (5th Cir. 2018).

[45] Mot. 6.

[46] *Id.* at 9.

[47] *Id.*

[48] *Id.*

[49] 424 U.S. 319 (1976).

[50] Mot. 11.

[51] 529 U.S. 1 (2000).

[52] Mot. 12

[53] *Id.*

Regarding Plaintiff's *ultra vires* claim, Defendant argues the court lacks jurisdiction because Plaintiff fails "to allege that the Secretary acted in his individual capacity, exceeded his statutory authority or his actions were unconstitutional."[54] Lastly, Defendant asserts the court "does not have jurisdiction under 28 U.S.C. § 1331 because the Medicare Act specifically excludes federal question jurisdiction for actions 'arising under' the Medicare Act."[55]

### b. *Plaintiff's Arguments*

First, Plaintiff claims that *Family Rehab.* "provides guidance as to collateral constitutional jurisdiction and the removal of the exhaustion requirement."[56] Plaintiff argues this court has jurisdiction over its constitutional and *ultra vires* claims pursuant to the collateral-claim exception.[57] In the alternative, Plaintiff asserts that the *Illinois Council* "no review exception" applies.[58] Plaintiff rejects Defendant's notion that the presentment requirement has not been satisfied, arguing the presentment requirement only requires a party to present its claim for benefits.[59] Plaintiff argues its claims are not barred by sovereign immunity.[60]

Finally, Plaintiff claims the court has jurisdiction over its *ultra vires* claim on the grounds that Defendant acted in his individual capacity, exceeded his statutory authority, and his actions were unconstitutional.[61]

---

[54] *Id.* at 14.

[55] *Id.* at 16.

[56] Resp. 4.

[57] *Id.*

[58] *Id.* at 11.

[59] *Id. at* 6.

[60] *Id.* at 7.

[61] *Id.* at 12.

8

2. <u>Motion to Dismiss for Failure to State a Claim</u>

    *a.*    *Defendant's Arguments*

In the alternative, Defendant moves to dismiss the suit pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[62] Defendant argues Plaintiff may not pursue a Due Process claim because it cannot establish the three *Eldridge* factors.[63] According to Defendant, Plaintiff's *ultra vires* claim against the Secretary must be dismissed as well, as it failed to allege the Secretary exceeded his statutory authority.[64] Lastly, Defendant argues that Plaintiff failed to state a claim that the Secretary violated the Medicare Act.[65]

    *b.*    *Plaintiff's Arguments*

In opposition, Plaintiff argues it has sufficiently stated a procedural Due Process claim.[66] Regarding its *ultra vires* claim, Plaintiff contends it has stated a claim, arguing Defendant failed to comply with the administrative review process in accordance with § 1395ff and Due Process.[67]

## II. LEGAL STANDARD

    *A.*    *Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.[68] "Federal courts are courts of limited jurisdiction," and it

---

[62] Mot. 17.

[63] *Id.* at 19.

[64] *Id.* at 28.

[65] *Id.* at 29.

[66] Resp. 13.

[67] *Id.* at 19.

[68] *See* FED. R. CIV. P. 12(b)(1).

9

is "presumed that a cause lies outside this limited jurisdiction."[69] A United States District Court has federal question jurisdiction when an action arises under the Constitution, laws, or treaties of the United States.[70] The party invoking federal subject matter jurisdiction bears the burden of establishing jurisdiction to grant the relief requested.[71]

When a party moves to dismiss under Rule 12(b)(1) in addition to another Rule 12 motion, a court should first examine a Rule 12(b)(1) jurisdictional challenge before addressing any attack on the merits.[72]

## III. DISCUSSION

Title 42, United States Code, section 405(h) ("§ 405(h)") precludes a court's exercise of federal question jurisdiction under 28 U.S.C. § 1331 when a claim arises under the Medicare Act.[73] It reads:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.[74]

---

[69] *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).

[70] 28 U.S.C. § 1331; *Kokkonen*, 511 U.S. at 377.

[71] *Id.*

[72] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

[73] 42 U.S.C. § 405(h).

[74] *Id.*

10

Title 42, United States Code, section 405(g) ("§ 405(g)") provides for judicial review of a final decision by the Secretary.[75] Indeed, § 405(g) "is the sole avenue for judicial review of all claims arising under the Medicare Act."[76] In relevant part, it provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.[77]

In *Mathews v. Eldridge*,[78] the Supreme Court held that jurisdiction under § 405(g) is governed by a two-prong test: (1) "there must have been a presentment to the Secretary"; and (2) "the claimant must have exhausted his administrative review."[79]

### 1. *Family Rehabilitation, Incorporated v. Azar*

To establish jurisdiction over its Due Process and *ultra vires* claims, Plaintiff relies on the Fifth Circuit's decision, *Family Rehabilitation, Incorporated v. Azar*.[80] According to Plaintiff, this court may exercise jurisdiction over the matter under the collateral-claim exception.[81] Under this exception, "jurisdiction may lie over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.'"[82]

---

[75] *See id.* § 405(g).

[76] *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citing *Heckler v. Ringer*, 466 U.S. 602, 605 (1984)).

[77] 42 U.S.C. § 405(g).

[78] 424 U.S. 319 (1976).

[79] *Affiliated Prof'l Home Health Care*, 164 F.3d at 285 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

[80] 886 F.3d 496 (5th Cir. 2018).

[81] Resp. 4–5.

[82] *Family Rehab.*, 886 F.3d at 501 (quoting *Eldridge* at 330–32).

In *Family Rehab.*,[83] a Medicare services provider sought injunctive relief to temporarily suspend recoupment of Medicare overpayments assessed at $7.6 million pending the completion of a hearing before an ALJ.[84] Due to a backlog of appeals, it was estimated that an ALJ hearing would occur in three to five years.[85] The Fifth Circuit noted that the earliest the plaintiff could complete administrative review would be through escalation, and even that was far off in time.[86] The Fifth Circuit held the court had jurisdiction over the Medicare provider's Due Process and *ultra vires* claims under the collateral-claim exception,[87] explaining:

> If the court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral. And if plaintiffs request relief that is proper under the organic statute—by requesting that benefits or a provider status be *permanently* reinstated—the claim is not collateral. But plaintiffs may bring claims that sound only in constitutional or procedural law (such as the *Kelly* claim at issue in *Eldridge*) and request that benefits be maintained temporarily until the agency follows the statutorily or constitutionally required procedures.[88]

Like *Family Rehab.*, Plaintiff asserts Due Process and *ultra vires* claims and seeks similar relief: an injunction to temporarily halt recoupment until an ALJ hearing occurs.[89] However, the present suit has a critical distinction from *Family Rehab*. For a court to have jurisdiction,

---

[83] 886 F.3d 496 (5th Cir. 2018).

[84] *Id.* at 500.

[85] *Id.*

[86] *Id.* The Fifth Circuit noted that "the earliest Family Rehab. could complete administrative review would be through escalation—which could be as late as July 24, 2018, or 270 days after October 24, 2017." *Id.* When one stage of review is bypassed through escalation, the reviewer has 180 days, instead of 90 days, to issue a decision. 42 C.F.R. § 405.1016; 42 C.F.R. § 405.1100(d). Therefore, if one stage of review is bypassed and the next stage of review proceeds as intended in the statute, this would result in the completion of administrative review within 270 days. Hence, the earliest possible timeline to complete the administrative review process is 270 days.

[87] *Family Rehab.*, 886 F.3d at 503.

[88] *Id.* (internal citations omitted) (emphasis in original).

[89] Resp. 5. In *Family Rehab.*, the Fifth Circuit describes the plaintiff's request as a "hearing." The plaintiff appears to have sought, specifically, an ALJ hearing. However, it is not clear in its contemplation whether the Fifth

§ 405(g) requires a party to first present its claims to the Secretary.[90] Critically, the first prong was not at issue in *Family Rehab*. In footnote seven, the Fifth Circuit noted that the presentment requirement had been satisfied.[91] It stated that "[t]here was no dispute that Family Rehab has met this requirement."[92] Hence, *Family Rehab*. hinged on the second jurisdictional prong—administrative exhaustion. Accordingly, this court must examine whether Plaintiff has satisfied *all* jurisdictional elements as set forth in § 405(g).

        2.      <u>Jurisdiction Under 42 U.S.C. § 405(g) & (h)</u>

            *a.*    *"Arising Under"*

Pursuant to §405(g) and (h), federal courts may exercise jurisdiction over a final decision by the Secretary when dealing with claims "arising under" the Medicare Act.[93] "A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claim is 'inextricably intertwined' with a claim for Medicare benefits."[94] The inquiry is whether the claim arises under the Medicare Act, not whether it lends itself to a substantive rather than procedural label.[95]

---

Circuit was referring to an ALJ hearing or meant a broader understanding of a hearing—a hearing that could theoretically be satisfied through the escalation process.

[90] *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

[91] *Family Rehab.*, 886 F.3d at 501 n.7.

[92] *Id.*

[93] *Id.* at 500 (emphasis added).

[94] *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (quoting *Heckler v. Ringer*, 466 U.S. 602, 606 (1984)) (internal citations omitted).

[95] *Heckler*, 466 U.S. 602, 614 (1984) (applying § 405(g) in the Social Security context).

Plaintiff does not dispute its claims arise under the Medicare Act.[96] Plaintiff asserts statutory, Due Process, and *ultra vires* claims that all stem from a billing dispute over Medicare payments.[97] Simply stated, Plaintiff's claims are "inextricably intertwined" with its claim for Medicare benefits. As Plaintiff's claims arise under the Medicare Act, the court may not exercise § 1331 jurisdiction over this suit. The court next considers whether Plaintiff has satisfied § 405(g)'s two-prong test.

      b. *Presentment*

To obtain judicial review, § 405(g) requires a plaintiff to present its claims to the Secretary.[98] This first prong "can never be waived and no decision of any type can be rendered if this requirement is not satisfied."[99] In *Shalala v. Illinois Council on Long Term Care, Inc.*,[100] the Supreme Court explained the Medicare Act:

> demands the "channeling" of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying "ripeness" and "exhaustion" exceptions case by case. But this assurance comes at a price, namely, occasional individual, delay-related hardship.[101]

Significantly, Plaintiff does not claim to have presented its constitutional, statutory, and *ultra vires* claims to the Secretary.[102] Nor does the court's record reflect otherwise. These are

---

[96] *See generally* Resp.

[97] Compl. 11–13.

[98] *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

[99] *Id.*

[100] 529 U.S. 1 (2000).

[101] *Id.* at 13.

[102] *See generally* Compl.; Resp.

14

legal challenges that must be channeled through the agency. Critically, this first prong "can never be waived."[103] Without this requisite presentment jurisdictional element, the court may not intervene in this matter.

Nevertheless, Plaintiff argues § 405(g) does not require its Due Process and *ultra vires* claims to be presented to the Secretary.[104] Plaintiff argues that "[t]he government is wrong in arguing that this is the type of 'claim' contemplated in determining jurisdiction under § 405(g)."[105] According to Plaintiff, the meaning of "claim" in § 405(g) means a "claim for benefits."[106] Plaintiff highlights the use of "claim" in § 405(h), which reads:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on *any claim arising under this subchapter*.[107]

Under Plaintiff's interpretation, the presentment requirement would be satisfied where a healthcare provider had sought review of an unfavorable decision of Medicare payments.

To support its proposed statutory interpretation, Plaintiff relies on an Eleventh Circuit decision, *American Academy of Dermatology v. Department of Health & Human Services*.[108] The Eleventh Circuit found the presentment requirement was applicable, as the claims arose

---

[103] *Affiliated Prof'l Home Health Care*, 164 F.3d at 285.

[104] Resp. 6.

[105] *Id.*

[106] *Id.*

[107] 42 U.S.C. § 405(h) (emphasis added).

[108] Resp. 6 (citing 118 F.3d 1495 (11th Cir. 1997).

under the Medicare Act.[109] However, *American Academy* did not involve constitutional or *ultra vires* claims. There, the plaintiffs alleged violations of Part B of the Medicare Act, 42 U.S.C. §§ 1395j-1395w-4.[110] Furthermore, the Eleventh Circuit did not comment on whether constitutional or *ultra vires* claims would be considered "claims arising under this subchapter."[111] Accordingly, *American Academy* is distinguishable and fails to provide guidance in this case.

Plaintiff has failed to satisfy a requisite jurisdictional element under § 405(g), as it did not present its statutory, constitutional, and *ultra vires* claims to the Secretary. Therefore, this court is without subject matter jurisdiction to consider Plaintiff's claims.

        *c.*    *Exhaustion*

It is not disputed that Plaintiff did not exhaust its administrative remedies, as required by the second prong of § 405(g). Although exhaustion is a "waivable requirement,"[112] the court need not determine whether the collateral-claim exception or the *Illinois Council* "no review" exception[113] apply to Plaintiff's claims. As determined above, Plaintiff failed to first present its claims to the Secretary—a non-waivable jurisdictional requirement. Accordingly, the court does not have subject matter jurisdiction and must dismiss the case.

---

[109] *Am. Academy of Dermatology v. Dep't. of Health & Hum. Servs.*, 118 F.3d 1495, 1499 (11th Cir. 1997).

[110] *Id.* at 1496.

[111] 42 U.S.C. § 405(h).

[112] *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

[113] This is a "very narrow exception to the channeling requirement 'where application of § 405(h) would not simply channel review through the agency, but would mean no review at all.'" *Sw. Pharm. Sols., Inc. v. Ctrs. for Medicare and Medicaid Servs.*, 718 F.3d 436, 440 (5th Cir. 2013) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000)).

16

## IV. CONCLUSION AND ORDER

As Plaintiff did not present its constitutional, statutory, and *ultra vires* claims to the Secretary as required under § 405(g), this court lacks subject matter jurisdiction over the matter. Consequently, this court need not address Defendant's motion to dismiss pursuant to Rule 12(b)(6).

The motion to dismiss for lack of subject matter jurisdiction in "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim" [ECF No. 24] is **HEREBY GRANTED**.

**SO ORDERED.**

**SIGNED** this __26__ day of **July, 2019**.

FRANK MONTALVO
UNITED STATES DISTRICT JUDGE